IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| MARIE ASSA'AD-FALTAS, | ) | Civil Action No. 3:06-0080-TLW-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pro se pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On December 14, 1998, Plaintiff applied for DIB. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held November 9, 1999, at which Plaintiff appeared and testified, the ALJ issued a decision dated June 20, 2000, denying benefits and finding that Plaintiff was not disabled because she could perform has past relevant work as a physician through December 31, 1998, when her insured status for purposes of DIB expired.

On August 25, 2000, Plaintiff filed a request for review of the ALJ's decision. On April 4, 2003, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded Plaintiff's case to an ALJ for further proceedings. Tr. 936-938. On August 26, 2003, a

supplemental hearing was held before a different ALJ. On August 12, 2004, the ALJ denied Plaintiff's claim, finding that she was not disabled because she did not have a "severe" impairment.

Plaintiff was forty-five years old at the time she was last insured for DIB purposes (December 31, 1998). She has a medical doctorate degree and a master's degree in public health. She worked as a physician until November 1993, when her employment contract expired. Plaintiff alleges disability since May 2, 1995, due to heart and breathing problems. Tr. 77.

The ALJ found (Tr. 48-49):

1. THE CLAIMANT MET THE NONDISABILITY REQUIREMENTS FOR A PERIOD OF DISABILITY AND DISABILITY INSURANCE BENEFITS SET FORTH IN SECTION 216(I) OF THE SOCIAL SECURITY ACT AND WAS INSURED FOR BENEFITS THROUGH DECEMBER 31, 1998, BUT NOT THEREAFTER.

2. THE CLAIMANT HAS NOT ENGAGED IN SUBSTANTIAL GAINFUL ACTIVITY SINCE THE ALLEGED ONSET OF DISABILITY.

3. DURING THE PERIOD RELEVANT TO THIS DECISION, THE CLAIMANT HAD THE FOLLOWING MEDICALLY DETERMINABLE IMPAIRMENT(S): THYROID DISEASE, HISTORY OF LARYNGEAL NERVE DAMAGE, AND ASTHMA.

4. THE CLAIMANT DID NOT HAVE ANY IMPAIRMENT OR IMPAIRMENTS THAT SIGNIFICANTLY LIMITED HER ABILITY TO PERFORM BASIC WORK-RELATED ACTIVITIES PRIOR TO DECEMBER 31, 1998; THEREFORE, THE CLAIMANT DID NOT THEN HAVE A "SEVERE" IMPAIRMENT (20 CFR § 404.1520).

5. THE CLAIMANT WAS NOT UNDER A "DISABILITY" AS DEFINED IN THE SOCIAL SECURITY ACT, AT ANY TIME PRIOR TO DECEMBER 31, 1998 (20 CFR § 404.1520(C).

On August 11, 2005, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner.[1]  Plaintiff filed this action on January 9, 2006.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972).  Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...."  See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

In 1977, Plaintiff underwent a subtotal thyroidectomy for treatment of hyperthyroidism.  Tr. 710.  She underwent a subtotal thyroidectomy for treatment of recurrent hyperthyroidism in 1980, which resulted in a laryngeal nerve injury and inadequate airway, necessitating a tracheostomy.  Tr. 232, 264.

Following surgery, Plaintiff was placed on a low dose of thyroid hormone (Synthroid).  Tr. 232.  She progressively increased her doses of Synthroid on her own which she claims was needed

---

[1]On October 12, 2005, the Appeals Council (in response to Plaintiff's request) extended the time for Plaintiff to file a civil action (for 90 days from the date she received the letter).  See Attachment to Complaint.

to treat various symptoms, including menorrhagia, occasional edema, tachycardia, and shortness of breath. Tr. 232, 238.

In October 1991, Plaintiff underwent an electrocardiogram, the results of which were normal. The cardiologist stated that Plaintiff also underwent a normal treadmill exercise test with a fair exercise tolerance (the test was terminated after six minutes due to fatigue and dyspnea). Tr. 235, 241. Plaintiff underwent a pulmonary examination in October 1991. The pulmonologist suggested a diagnosis of possible mild asthma, provided Plaintiff with an albuterol inhaler to use before exercise, and found no basis for continuing treatment of her. Tr. 237. Physical examination in December 1991 revealed normal blood pressure, normal pulses, no edema in her extremities, and normal neurologic functioning. Tr. 233.

On February 11, 1999, Dr. Jairaj Prashad examined Plaintiff at the request of the Commissioner. Tr. 252-253. Plaintiff reported that she was unable to work due to dyspnea, hypothyroidism, and nocturia. She complained of continual shortness of breath, blurred vision, congestion, coughing, dizziness, painful and swollen feet, racing heart, constipation, fatigue, poor sleep, and loneliness. Plaintiff stated that Synthroid and occasional calcium supplements were her only medications. Tr. 252. Dr. Prashad's examination revealed that Plaintiff had normal vision with corrective lenses, no edema in her extremities, normal pulses in her extremities, elevated blood pressure, and no neurological deficits. Tr. 253. The results of her EKG were within normal limits and a chest x-ray revealed that Plaintiff had normal heart size. Tr. 253. Dr. Prashad diagnosed hypothyroidism, clinically euthyroid[2] on supplement; status post total thyroidectomy with partial

---

[2]Euthyroidism is "the condition of having normal thyroid function, as opposed to hyperthyroidism and hypothyroidism." Dorland's Illustrated Medical Dictionary 650 (30th ed. 2003).

4

paralysis of the left vocal cord with no stridor;[3] history of congestive heart failure with no evidence on physical examination; obesity; nocturia; and shortness of breath by history, unexplained by physical examination or x-ray findings. Tr. 253.

On April 10, 1999, Dr. Robespierre M. Del Rio, a psychiatrist, examined Plaintiff. Plaintiff denied any history of psychiatric treatment and identified nocturia, hypertension, and hypoparathyroidism as her current medical problems. Tr. 257. Although Plaintiff complained of difficulty speaking due to laryngeal nerve damage, Dr. Del Rio did not notice any stridor or speech impediment during the evaluation. Tr. 257. Plaintiff reported that she treated her own conditions, she took only Levothyroxine and a calcium supplement, and denied any significant side effects. Tr. 257. Dr. Del Rio reported that he found no mental illness. Tr. 259.

On April 16, 1999, Dr. Elbert Johnson, Jr., reviewed Plaintiff's medical records and assessed Plaintiff's residual functional capacity ("RFC"). Dr. Johnson concluded that Plaintiff could perform light work that did not involve concentrated exposure to extreme heat or cold. Tr. 107-114. On June 10, 1999, Dr. Jean B. Laborde, Jr. concurred with Dr. Johnson's assessment. Tr. 114.

On May 4, 1999, Dr. Manhal Wieland, a psychologist, completed a Psychiatric Review Technique Form. Dr. Wieland opined that Plaintiff did not have a medically determinable mental impairment. Tr. 115.

At the hearing on November 9, 1999, Plaintiff testified that she was treating herself and Synthroid (for her thyroid condition) was her only prescription medicine. Tr. 1086. She testified that when she increased her dosage of Synthroid (which she believed she needed to do to alleviate

---

[3]Stridor is "a harsh, high-pitched breath sound such as the one often heard on inhalation with an acute laryngeal obstruction." Id. at 1774.

5

heavy menstrual bleeding), she experienced tachycardia, extreme shortness of breath, and arrhythmias. Tr. 1086. Plaintiff stated that she experienced extreme shortness of breath which was alleviated by "period[s] of REM sleep," swelling of her feet, weakness in her right wrist, and interrupted sleep due to nocturia. Tr. 1082-1084, 1090. She testified that she could stand for ten minutes, sit for one hour, and climb one flight of stairs. Tr. 1089-1091.

At the hearing on August 26, 2003, Plaintiff testified that she stopped working in 1993 because her employment contract ended. Tr. 1157-1158. The ALJ asked Plaintiff if she was aware of "any medical evidence in the form of either treatment records or reports" relating to her condition during the period from May 2, 1995, to December 31, 1998. Tr. 1145. Plaintiff testified that she had been treating herself "with sleep" during the period (Tr. 1165), and also indicated that she had "a lot" of records of her own examination and treatment of herself, and possibly "some incidental reports" of treatment during the period. Tr. 1145. The ALJ also asked Plaintiff to draft and submit an affidavit as evidence of her self-treatment. Tr. 1166-1167.

Plaintiff alleges that: (1) the ALJ's decision is not supported by substantial evidence and correct under controlling law; (2) the ALJ failed to fully develop the record; (3) the ALJ erred in failing to correct the medical report of Dr. Sribnick to show that she had severe asthma;[4] (4) the ALJ erred in taking Plaintiff's intellect as evidence of unimpaired physique; (5) the ALJ erred in totally disregarding Plaintiff's reports of her own treatment of herself and in crediting the opinion of biased State agency physicians; and (6) the ALJ erred in failing to find that she met or equaled one of the

---

[4]Plaintiff also makes numerous arguments about an examination (well after Plaintiff's last date insured) in January 2000 (see Tr. 228), by Dr. Sribnick. Dr. Sribnick's records are not a part of the certified record, as the ALJ in the first hearing declined to consider them. This court is precluded from considering evidence that is not part of the certified record. See 42 U.S.C. § 405(g); Smith v. Chater, 99 F.3d 635, 638 n. 5 (4th Cir. 1996).

listings of impairments ("Listings"), 20 C.F.R. Part 404, Subpart P, Appendix 1.  Plaintiff also appears to argue that this Court should promulgate procedural and policy considerations for the Social Security Administration.[5]  The Commissioner contends that the ALJ's decision is supported by substantial evidence.[6]

In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520.  The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy.  See id.

At any hearing, the ALJ has an affirmative duty to the plaintiff to reach a decision only after a "full and fair" hearing.  20 C.F.R. § 404.927 (1990).

> While lack of representation by counsel is not by itself an indication that a hearing was not full and fair (footnote omitted), it is settled that where the absence of counsel

---

[5]In particular, Plaintiff appears to contend that the Court should delineate the weight of the testimony of the self-managing healthcare provider and make policy considerations concerning disability awards to 'highly educated individuals who are mentally very competent but physically unable to do even light work." Plaintiff's Amended Brief at 20.  As discussed above, the only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence.  See Richardson v. Perales, supra.

[6]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966).  It must do more, however, than merely create a suspicion that the fact to be established exists.  Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

> created clear prejudice or unfairness to the claimant, a remand is proper. . . It is equally settled that in pro se cases, Administrative Law Judges have a duty to assume a more active role in helping claimants develop the record.

Sims v. Harris, 631 F.2d 26 (4th Cir. 1980)(citations omitted).  See also Walker v. Harris, 642 F.2d 712 (4th Cir. 1981) and Cook v. Heckler, 783 F.2d 1168 (4th Cir. 1986).

Here, each of the ALJs informed Plaintiff of her right to be represented by an attorney or some other qualified person at the hearing, but Plaintiff stated that she wished to proceed without a representative.  Tr. 1076, 1118-1119.  The ALJs inquired as to Plaintiff's age, education, and past vocational experiences.  They also inquired as to Plaintiff's impairments, her daily activities, and her limitations.  At the second hearing, the ALJ specifically kept the record open to allow Plaintiff to review her record, make sure the record was complete, and submit an affidavit concerning her medical treatment during the relevant period.

The ALJ's decision that Plaintiff was not disabled at step two (that she did not have a "severe" impairment) is supported by substantial evidence.  It is the claimant's burden to show that he or she had a severe impairment.  See Bowen v. Yuckert, 482 U.S. 137, 145 n. 5 (1987).

A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" means:

> The abilities and aptitudes necessary to do most jobs.  Examples of these include --
>
>> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>>
>> (2) Capacities for seeing, hearing, and speaking;
>>
>> (3) Understanding, carrying out, and remembering simple instructions;
>>
>> (4) Use of judgment;

> (5) Responding to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

> An impairment must be established by objective medical evidence. An impairment:
>
>> must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms.

20 C.F.R. § 404.1508. A symptom is a claimant's own description of his or her physical or mental impairment and a claimant's statements alone are not enough to establish that there is a physical or mental impairment. 20 C.F.R. § 404.1528(a). In the Social Security Rulings, the Commissioner has emphasized that the existence of a severe impairment can only be established by objective medical evidence:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.

SSR 85-28.

The ALJ's determination that Plaintiff did not have a "severe" impairment during the relevant time period is supported by substantial evidence.[7] As discussed above, examination in 1991 revealed normal blood pressure, normal pulses, no edema in Plaintiff's extremities, and normal neurologic functioning. Tr. 233. Dr. Prashad examined Plaintiff in February 1999 as discussed above. He noted no physical limitations on Plaintiff's ability to work. Tr. 252-253. Dr. Del Rio examined Plaintiff in April 1999 and noted no mental illness. Tr. 257-259.

Plaintiff submitted no medical evidence concerning her medical condition during the time period relevant to her claim. Plaintiff's testimony regarding her symptoms is insufficient to satisfy the requirement of producing "medical signs or laboratory findings to substantiate the evidence of a medically determinable physical or mental impairment." SSR 96-4p.[8] Although Plaintiff is herself a physician, she has presented no authority that this exempts her from this requirement. The ALJ, at the hearing, encouraged Plaintiff to submit "any medical evidence" relating to her condition from May 2, 1995 to December 31, 1998 (Tr. 1145) and also invited her to present such evidence in the form of an affidavit documenting her self-treatment. Tr. 1166-1167.

---

[7]As the ALJ's decision to find Plaintiff not disabled at step two is supported by substantial evidence, there was no need to continue the sequential evaluation and consider whether Plaintiff met or equaled one of the Listings of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, at step three. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

[8]This Ruling provides, in part:
> In the absence of a showing that there is a "medically determinable physical or mental impairment," an individual must be found not disabled at step 2 of the sequential evaluation process. No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment.

SSR 96-4p.

Although Plaintiff testified that she had "a lot" of records reflecting her examinations and treatment of herself, and possibly "some incidental reports" of treatment during that period (Tr. 1145), she submitted no such records. Plaintiff did submit a memorandum with an attached statement on September 26, 2006. Tr. 946-947. The statement she attached to the memorandum, however, is unsworn[9] (Tr. 955) and generally just deals with her credentials, personal history, her theories of various concepts of medical science, and a discussion of her condition before and after the relevant time period. Tr. 948-955. The only information in the statement Plaintiff provided concerning her condition during the relevant time period was:

> In the 1995-1998 period, as well as before and after, I often took my own blood pressure and measured my own respiratory peak flow. My respiratory peak flow was consistently about half of the predicted value for my age and height. My blood pressure was more often elevated than normal although it varied a lot and I could not detect a consistent pattern.
> \*\*\*\*\*
> In 1995-1998, I had essentially only one to three hours per day which could be used for gainful activity, and sedentary activity at that. This 1-3 hours/day left after caring for myself were unpredictable.

Tr. 952, 954.

---

[9]An affidavit is defined as:

A voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public.

Black's Law Dictionary 62 (8th ed. 2004). Plaintiff's September 26, 2006 statement does not appear to have been sworn before an officer authorized to administer oaths. Further, the statement does not appear to comport with 28 U.S.C. § 1746, which (if applicable) allows for "unsworn declarations under penalty of perjury" to support any matter that legally requires an affidavit to support it. According to § 1746, the declaration must comport to the following form: "I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." 28 U.S.C. § 1746(2).

11

The record also contains some records of medical treatment which occurred well after Plaintiff's last date insured.[10] Although medical reports and evaluations made after the expiration of insured status may be relevant to the extent they shed light on the claimant's condition prior to the expiration of his insured status, see Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir.1987), no such correlation has been made here.

The ALJ's decision is also supported by the findings of the State agency physicians and psychologist, as discussed above. See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review.").

## MOTION TO STRIKE

On October 30, 2006, Plaintiff filed a pleading titled "PLAINTIFF'S REPLY BRIEF AND REQUEST FOR ORAL ARGUMENTS OR, IN THE ALTERNATIVE, MOTION TO STRIKE

---

[10]There was no evidence of deep venous thrombosis demonstrable in either of Plaintiff's lower extremities in June 1999. Tr. 269. On February 24, 2000, Plaintiff's brother-in-law (a physician) stated that he reviewed the results of spirometry performed on 1/3/2000 and a report of an echocardiogram dated 2/1/2000 [apparently related to Dr. Sribnick's examination] and stated "According to my expertise, and to the medical literature, the finding of left ventricular hypertrophy and pulmonary hypertension are consistent with complications of obstructive sleep apnea. Correlation with symptoms and clinical presentation is indicated." Tr. 171.

Plaintiff submitted a portion of a sleep study conducted in November 2001 without the interpretive results or physician's notes. Tr. 1025-1027. A chest x-ray in November 2001 revealed only mild chronic changes in Plaintiff's lungs with no acute process seen. Her heart was not enlarged. Tr. 1023. An ultrasound in July 2002 showed uterine fibroids, but there is no indication of any treatment for such and Plaintiff's gynecologist noted in August 2003 that it was fine to manage her uterine fibroids with observation. Tr. 1068. Bone scans in October 2001 revealed results within normal bone mineral density ranges. Tr. 1059. On August 5, 2002, Dr. Juraj Osterman stated that he recommended medical management of Plaintiff's elevated blood pressure.

DEFENDANT'S BRIEF AND GRANT SUMMARY JUDGMENT IN PLAINTIFF'S FAVOR."

On November 9, 2006, the Commissioner filed a response in which she contends that it is not necessary for this court to hold oral argument and that a motion to strike its brief is inappropriate.

Plaintiff's request for oral argument should be denied because the facts and legal contentions in this action are adequately presented in the materials before the Court and argument would not significantly aid in the decisional process. It is recommended that Plaintiff's motion to strike and for summary judgment be denied. It is unclear the basis for such a motion. Further, there is no basis for summary judgment in this action. The applicable statute for district court review of a decision of the Commissioner merely provides:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g).

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and

this Court cannot reverse that decision merely because the evidence would permit a different conclusion.  Shively v. Heckler, supra.  It is, therefore,

    RECOMMENDED that the Commissioner's decision be affirmed.

    It is also recommended that Plaintiff's motion for oral argument, or alternatively to strike and for summary judgment (Doc. 15) be denied.

    Respectfully submitted,

    s/Joseph R. McCrorey
    United States Magistrate Judge

February 27, 2007
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).